Good morning. Let's all be seated. Okay, I'm going to ask the clerk to call the matter, would you please? This is Special Master Hearing Case Number 19-17074, Al-Qarqani v. Chevron, presided by the Honorable Judge Tashima. Okay, first of all, let me get the appearances from counsel who are here. All right. All right. Good morning to all of you. And then, I assume you've had a chance to look at the docket from yesterday to today, and you've seen Mr. Chung's long, rambling letter, 15-page letter, single-spaced to the court. Essentially, among other things, he says he's not appearing today. I'm not sure why. One reason he did is because he wasn't subpoenaed. But, of course, he's a counsel of record, and I think that alone would require his presence, especially since he agreed to this hearing date. I don't even know if he actually requested the hearing also. Yes, and you were here when we went through everybody's calendar at the pre-hearing conference, and we picked this date because it was convenient for him and for you. But anyway, regardless of his reasons, he's not here. I will look into whether, in my view, that's a direct contempt or not, or an indirect. But I'll make that decision after we do some research. But it seems to me a willful failure to comply with an order of the court is a direct contempt. To appear at a hearing at which the counsel has agreed to appear is a direct contempt. But I'm going to do some research. So I'll get to that issue later, and we'll then decide whether he needs further proceedings on that or not. But today we're here from the supposedly not evidentiary hearing on the issue, the single discrete issue that was delegated to me as special master by the panel, right, to make a recommendation on. First of all, I think you, meaning the respondent appellate, Chevron et al., indicated in your briefing that with one reservation, you had no intent of calling any witnesses, right, for your own. I'm correcting that, am I not? All right. But Mr. Chong, first a witness list, as was directed as part of the pre-hearing conference order. And again, you know, any further evidence that he knew there was a hearing today. And he added that list to his, I think, to the test of his opening brief. My recollection is, let's see. First of all, he listed several partners at Gibson, including you, Ms. Champion, right? And then he listed a couple of, I assume they're officials of the Saudi government, but I don't know who they are. But apparently they're Middle Easterners, not in this country anyway. All right, so they're both officials or former officials of the Saudi government, right? And as far as we know, they're in Saudi Arabia or somewhere else at the direction of the Saudi government, right? So they're not here in this venue, right? And then, to me, most astounding of all, he listed two of the judges on the panel that decided the merits appeal of his clients against Chevron. And I don't know where he got that notion, that this was the proper proceeding in which to subpoena them. But, you know, obviously it doesn't make any sense. And he cites no authority to support his position that he can have such witnesses at this hearing. So, long and short of it is, as far as I'm concerned, none of the witnesses on his witness list. Oh, by the way, the other thing I asked at the pre-hearing conference, remember, is that there be a short summary of the testimony of the witnesses on each party's list. And, you know, giving those summaries that he's provided to me, Mr. Chung, the most favorable interpretation to him is no way that any of those persons, one, could have any information that would enlighten the issue before the special master in this limited proceeding. So, although, you know, it's sort of a necessary step, but at this point I'm going to rule that, you know, none of his witnesses have anything relevant to say in this proceeding. So I strike out all his witnesses from his witness list. Now, the only witness I think Chevron had was, I think, a lawyer at Gibson who filed a declaration, right? All right. Right. And then you made a motion, right? You made a motion to, in effect, have that declaration admitted. Something like that, right? And I granted that motion, right? So that means your conditional calling of the witnesses is no longer necessary, right? Right. Because the document's in the record and it's not challenged. All right. So now, here we are. You see, so at this point I'm going to proceed as if this is, and I think it is, a default hearing, right? There's no opposition. Mr. Chung has declared his intent not to be present and there's no reason not to go ahead with the hearing. All right. So I'm going to ask you, do respondents, appellees, you have any evidence you want to present at this hearing? Your Honor, we do have a line of exhibits. We're happy to walk through with you what's in there, but we're happy to hand it up. I think it's all publicly material, publicly filed material that's already in this case. Other forms of knowledge that's not technically publicly filed. But we do have a line of exhibits that we think will be useful to Your Honor. All right. Then without opposition, do you have a list, a written list of the ones? All right. All right. Then without opposition, I'm going to admit all of the exhibits are listed in appellee's respondents' exhibit list. All right. And would you hand that to the clerk? Yes. I'll just note for the record that it's for the clerk's instructions, we gave them letters. Okay. And it's exhibit 81. Yes. We've also added Mr. Chung's letter from last night, and so it's exhibit 81 through 00. All right. Boy, that's almost, let's see if I can add 26 and 20 or something. Almost 50 exhibits, huh? Yes. Okay. Good. All right. So then those are admitted, and the clerk will note that all of the exhibits are listed on the exhibit list. All right. And all of those exhibits are admitted now. All right. So those exhibits are admitted. And I'm sorry, I know one of the lawyers here was prepared to take part in the evidentiary portion, but I'm sorry you've had an unnecessary trip because, you know, there won't be much of an evidentiary portion in this case. But I think that's it. Did I close the record? You have nothing else you want to offer, right? No, there aren't. Mr. Chung has decided not to appear, and he's in default, so there'd be nothing on his side, so the record is closed. Now, I expected, if we had a hearing, you know, to ask Mr. Chung to testify. I think I indicated that earlier, to see, you know, anything he wanted to say about the Saudi Sun article. It's my view, from what I know about the documentary evidence admitted into this proceeding, that there's a pretty strong inference, very strong inference, that the Saudi Sun article was prepared either by or at the behest of Mr. Chung, and there's nothing to counter that inference. So I don't view his, I say that only for the purpose of reflecting that I don't think it's necessary to hear from Mr. Chung in order to have a complete record on which I can make a recommendation to the panel what to do. What I'm going to do is, and you made this, I know for many, many years ago Gibson Dunn is a Los Angeles firm, but none of you are from Los Angeles, are you? Is that right? Right, Mr. Henry's in San Francisco. Yeah, all right. Yeah, all right. So you've come a long way, you know, for very little to do. But I'm going to give you, if you want, I'm going to give you a chance to make a brief argument. You don't have to, you know, go into too much detail. I've read all the papers, including your brief, and I gather, I don't know why I gather this, but I gather you sort of had the laboring oar in all these matters in this special proceeding. But I'm going to give you an opportunity to make an argument addressing one, right, the factual question that's been referred to this hearing, which as you said several times in your papers, you know, is a very discreet inquiry. And then two, maybe even a briefer argument on whether the facts in this case support the imposition of sanctions and beyond that, you know, whether it's an appropriate case in which I should recommend to the panel that sanctions be imposed. Okay, now, are you ready to go proceed, or do you want a little recess or what? We have plenty of time now. All right, then would you get up to the lectern? Yes, I would appreciate that. It would be easier to record you. Get up to the lectern and, you know, go ahead with your argument. That's fine. That's fine. Do I need to press a button here? Okay. So your Honor already covered many of the points that I had planned to address if your Honor needed it this morning, so I'll limit myself to the points that you just identified. So as you recall, the Ninth Circuit tasked your Honor with conducting any proceeding you deem appropriate to determine the legitimacy of the article attached at docket entry number 66 and to prepare a written recommendation to this panel regarding what, if any, sanctions should be imposed for submitting it to the court. So this is docket 66, as your Honor will recall. It's called the Saudi Sun. It's mocked up to look like a newspaper. It has multiple articles, photographs. It goes on for 15, 16 pages. You know, so we respectfully submit, as your Honor has already indicated, that you do have sufficient information to make your report and recommendation on this factual point, on the legitimacy of the Saudi Sun article. Mr. Chunk filed the document under his own ECF credentials. The document has no authors listed. It has no indications that it's a real publication. We have submitted a declaration from Mr. Spencer Scott, a research librarian, who has indicated he is unable to find any record that this publication exists. Mr. Chunk has never provided any information that this is a legitimate publication. In fact, he has effectively admitted that it is not. In his letter of last night, he called it a hypothetical paper. He has repeatedly referred to it as a demonstrative exhibit. So he has effectively admitted that this is not a legitimate news publication. We also noted we submitted into the record, it said Exhibit MM, the overlap chart. This chart shows overlap between the content of the Saudi Sun and prior filings by petitioners by Mr. Chunk in both this case and the Texas case. So this includes a lot of textual overlap, but it also includes pictorial overlap. And you'll see, if you just look through this, the overlap is remarkable. So it's clear that Mr. Chunk prepared this, or as you noted, that it was prepared by someone at his behest. Because otherwise, why all the overlap? And really, it was just a vehicle to give an air of legitimacy to his legal arguments by putting them in a package that looks like it's coming from an independent third party. He encouraged the court to rely on it in his pleading. He described it as an informative summary that would aid the court. And effectively, by refusing to attend today's hearing and to answer questions under oath, he has admitted his wrongdoing. He's made more than a dozen filings since these special master proceedings were commenced and has never identified how this document was prepared or who prepared it. I think that speaks for itself that he's not willing to go under oath on that topic. To move on to the second point that Your Honor asked us to address, whether this conduct is sanctionable and what sanctions should be imposed, Mr. Chunk's conduct is sanctionable as bad faith fraud on the court. And it's sanctionable pursuant to the court's inherent authority. In Hazel Atlas Glass v. Hartford Empire Company 322 U.S. 238, that's a 1944 Supreme Court case, the Supreme Court held that submission of a ghostwritten newspaper article without disclosure of its authorship constituted a scheme to defraud the Court of Appeals. Very similar to this case. That is what Mr. Chunk did here. Mr. Chunk has tried to argue in his briefing that if the contents of the Saudi Sun are truthful or legitimate, he cannot be sanctioned for submitting it. But the Supreme Court rejected that exact argument in Hazel Atlas, saying that the truth needs no disguise. The article, even if true, should have stood or fallen under the only title it could have honestly have been given. That of a brief in behalf of Hartford, prepared by Hartford's agents, attorneys, and collaborators. Again, strikingly similar to the situation here. We would also submit that Mr. Chunk's behavior is sanctionable under Ninth Circuit General Order 12.9a because it violates numerous rules of the Washington Rules of Professional Conduct and also the Federal Rules of Appellate Procedure. Your Honor probably recalls that General Order 12.9a provides in relevant part that sanctions may be imposed against counsel for conduct that violates the Rules of Professional Conduct or Responsibility in effect where counsel maintains his or her principal office. For Mr. Chunk, this is Seattle, Washington. Washington Rule of Professional Conduct 3.3a.1 prohibits a lawyer from making a false statement of fact or law to a tribunal or failing to correct a false statement of material fact or law previously made to the tribunal. Now, this is what Mr. Chunk has done here. And note that there is no materiality requirement for the making of a false statement. But even if there were, materiality is satisfied here. Mr. Chunk is also engaged in conduct involving dishonesty and deceit which violates Washington Rule of Professional Conduct 8.4c. By filing a fake newspaper from a nonexistent publication and urging the court to rely on it while failing to disclose the fact that it was ghostwritten by himself or by someone at his direction, Mr. Chunk has made a false statement of fact or law to the tribunal, and he has failed to correct it, and he is engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. His conduct also violates Federal Rule of Appellate Procedure 46c which prohibits counsel from engaging in conduct unbecoming a member of the bar. The Ninth Circuit held in Enrage of Artie, and I can give you a citation for that. It is 611F3D1027. That conduct unbecoming a member of the bar includes conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to the clients or the courts  Mr. Chunk's conduct here clearly satisfies that standard. It includes the submission of the article in the first place, but also everything that came after. The vexatious filings, the wild accusations of misconduct on the part of counsel, on the part of the judges of this court, really baseless and wild accusations. All the while refusing to address the central issue. Who prepared the article? And now refusing to show up and waiting until the last minute after everyone, including Your Honor, including us, prepared and came and showed up here. He filed something at 9 p.m. last night stating that he's not going to show up to a hearing that he himself requested. This is clearly conduct unbecoming of a member of the bar that is inimical to the administration of justice and that reflects an unfitness to discharge the continuing obligations to his clients and to this court. I would also note with respect to the court's inherent authority that the court held in In Re Boucher 837F3D869, the vice of misrepresentation is not simply whether it is likely to succeed, but that it imposes an extra burden on the court. I'm hard-pressed to think of a case in which an attorney has imposed such a burden on the court and on the parties through a misrepresentation that he failed to come clean about. These proceedings could have been very short. Mr. Chung could have admitted that he prepared the exhibit or explained why it was prepared and apologized. That's all he needed to do. He didn't do any of that. Instead, he subjected us to months of baseless pleadings. He subjected us to wild accusations of misconduct. His conduct really is vexatious and inappropriate in every way that I can think of. As for what sanctions should be imposed, we submit that respondents should be awarded or attorney's fees incurred in responding to the Saudi Sun and in participating in the Order to Show Cause and Special Master Proceedings as a compensatory sanction. This is an appropriate compensatory sanction because but for Mr. Chung's submission of the Saudi Sun article, none of us would be here today. Respondents would not have incurred attorney's fees in responding to the submission of the article in the first place and in carrying out the Special Master Proceedings. That's America Unites for Kids, 985 F3D 1075. That's a Ninth Circuit decision from 2021. We would also submit that the Special Master should recommend to the panel that Mr. Chung be referred for discipline by both Washington State and the Ninth Circuit. Ninth Circuit Rule 46-2B provides that a panel of judges may initiate disciplinary proceedings based on conduct before this court by issuing an Order to Show Cause under this rule that identifies the basis for imposing discipline. So while we understand that Your Honor views recommendation of disciplinary sanctions as beyond your purview at this stage, we do think it's appropriate and within your purview to recommend to the Ninth Circuit that they do so and that he be referred for discipline either before the Ninth Circuit, before his home bar of Washington State, or both. Again, Your Honor, I mean, truly, I'm aghast at the things that Mr. Chung has said about you, about the judges of this court. You know, he's even dragged in the names of young law clerks whose names now appear in pleadings, accusing them of misconduct. He's made accusations that Judge Miller accepted bribes or favors. I mean, it's truly outrageous. And, you know, perhaps those materials should be taken off the docket as well because they are baseless and inappropriate. But that is pretty much the summary of our argument, Your Honor. Do you have any questions that you'd like us to address? No, I think you've gone over it very well, including in your written submissions. And I appreciate all the time and effort you and your colleagues have put into this part of the case. Thank you, Your Honor. Thank you. All right. I don't think there's anything else for us to do. We've gotten the exhibits right, whatever exhibits have been admitted. As I say, this is a default hearing. Now it's turned into an end. So at this point, I don't think we have to schedule any further proceedings. This is the ultimate issue that's been delegated to me on which to make a recommendation. As to that issue, I think the proceedings are now complete. So I thank you for appearing and for all the work you did in preparation. This matter is now under submission, right? And this proceeding is adjourned. Right. And you have a copy of those? I don't need it now, but you've got those exhibits for me, right? Yeah. Okay. Thank you. All right. We are adjourned.
judges: Judge Tashima